46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Magaly Alvarez ROMERO, Defendant-Appellant.
 No. 93-5079.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Oct. 29, 1993.
Decided: Jan. 23, 1995.
 
 Arcangelo M. Tuminelli, Baltimore, MD, for Appellant. Gary P. Jordan, United States Attorney, Andrea L. Smith, Assistant United States Attorney, Baltimore, MD, for Appellee.
 Before WIDENER and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Magaly Romero appeals from a district court judgment entered pursuant to a jury verdict finding her guilty of conspiracy to distribute and to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1981) & 21 U.S.C. Sec. 846 (Supp.1993). Her attorney has filed a brief in accordance with Anders v. California, 386 U.S. 738, 744 (1967), raising arguments relating to the sufficiency of the evidence to support Romero's conviction, but also stating that, in his view, there are no meritorious issues for appeal.
 
 
 2
 We note that Romero's sufficiency challenge must be rejected if, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). To achieve a conspiracy conviction, the government had to show that a conspiracy existed, that the defendant had knowledge of the conspiracy, and that she voluntarily became a part of the conspiracy. See United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992).
 
 
 3
 Our review of the record discloses ample evidence from which the jury could find these elements established. The government presented extensive evidence of intercepted telephone conversations between a co-defendant, Alvin Stewart, and various other members of the conspiracy, including the defendant. Wiretaps revealed Stewart arranging the logistics of various drug transactions from his Baltimore apartment. In one case, after monitoring conversations which led law enforcement officials to believe that Stewart and two co-defendants would consummate a drug transaction at Stewart's apartment, officials conducted surveillance outside Stewart's apartment. They observed two co-defendants enter and exit the apartment, and, upon apprehending the two co-defendants in a vehicle shortly after they exited the apartment, conducted a search of the co-defendants and their vehicle during which they discovered the presence of cocaine.
 
 
 4
 The government also presented transcripts of numerous telephone conversations between Stewart and the defendant, which occurred during the time that Stewart was arranging various drug deals. Most of these conversations involved demands by Romero that Stewart pay debts owed to Romero from prior transactions. In some of the conversations, Stewart agreed to send Romero large sums of cash, and referred to having previously sent her large sums of cash. In conversations occurring in December, 1991, Stewart asked Romero to "do something for me," and asked if she could provide an "even one." Romero initially agreed to check, and later contacted Stewart to inform him that she could "come up with something if you have the money." When Stewart asked how much money, she replied "twenty." A Drug Enforcement Agent who actively participated in the investigation of the drug conspiracy testified at the trial that $20,000 was consistent with the cost of a kilogram of cocaine. The jury could reasonably infer from these exchanges that Romero and Stewart had reached an agreement whereby Stewart would purchase one kilogram of cocaine from Romero for twenty thousand dollars.
 
 
 5
 Romero contended that references to "one" or "two" in conversations between herself and Stewart did not refer to kilograms of cocaine, but to women who were part of a scheme to arrange sham marriages between Columbian drug dealers and American women to obtain conditional residency permits for the dealers. The jury, however, was free to draw its own inferences regarding the meaning of the terminology used in the intercepted conversations. See United States v. Vega, 860 F.2d 779, 796 (7th Cir.1988); United States v. Zanin, 831 F.2d 740, 745 (7th Cir.1987).
 
 
 6
 We conclude that substantial evidence supports the jury's inference in this case that a conspiracy existed, and that Romero knew of and voluntarily participated in the conspiracy. In accordance with the requirements of Anders, supra, we have examined the entire record in this case and find no other meritorious issues for appeal. The Court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this Court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client.
 
 
 7
 We affirm the district court's judgment order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 8
 AFFIRMED.